UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
QRS Recycling of Georgia, LLC,[1]               :     Case No. 16-158837
                                                :
               Debtor.                  :
---------------------------------------------------------x

## DECLARATION OF GREGORY L. JANSON IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY PLEADINGS

I, Gregory L. Janson, hereby make this statement under 28 U.S.C. § 1746 and state that:

1. I am the managing member of Debtor QRS Recycling of Georgia, LLC (the "Debtor"). In that capacity I am familiar with the Debtor, its operations, and the Debtor's chapter 11 bankruptcy case (the "Chapter 11 Case").

2. I have been involved with the Debtor's non-debtor affiliates since 1974, when I was six years old and my father founded non-debtor affiliate QRS, Inc. From 1986 to 1990, I attended Purdue University where I earned a B.A. in international relations and participated in the Naval Reserve Officer Training Course. Upon graduation I enlisted in the United States Marine Corps, where I served as an infantry officer from 1990 to 1998. In 1998, I rejoined the non-debtor affiliates and served as a general manager for the non-debtor affiliates' St. Louis operations. In 2007, my brother Matthew Janson and I purchased my father's equity interests in the non-debtor affiliates and I advanced to my current position.

3. On November 14, 2011, the Debtor was formed as a Kentucky limited liability company. In 2012, the Debtor opened its facility at 120 Hollow Tree Lane SW, Atlanta, GA

---

[1] The last four digits of the Debtor's taxpayer identification numbers are 5278. The Debtor's mailing address, solely for purposes of notices and communications, is 120 Hollow Tree Lane, Atlanta, Georgia 30354.

30354 (the "Facility"). At the Facility, the Debtor focused on plastic recovery, pioneering the sorting of centralized, mixed, post-consumer containers.

4. The Debtor's recycling operations were complemented by the operations of its non-debtor affiliates, QRS, Inc., Re-Poly, LLC, QRS Holding Company, QRS Export, Inc., QRS Direct, LLC, Rhino, LLC and QRS Re-Poly, LLC. Together, with the operations of its non-debtor affiliates in Baltimore, MD, Louisville, KY, New Albany, IN and St. Louis, MO, the Debtor was part of one of the largest recycling networks in the country, processing thousands of tons of post-consumer plastic, paper, cardboard, metal and commercial dry waste. As recently as 2014, the Debtor and its non-debtor affiliates were recognized by the American Chemistry Council with its Innovation in Plastic Recycling Award, and the Debtor and the non-debtor affiliates are generally regarded as national leaders in the recycling industry.

5. On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as well as certain motions and other pleadings (together, the "First Day Pleadings"). I am authorized by the Debtor to submit this declaration (the "Declaration") on its behalf in support of the First Day Pleadings.

6. The First Day Pleadings are intended to enable the Debtor to operate effectively and efficiently during the pendency of the Chapter 11 Case, avoid certain adverse consequences that might otherwise result from the commencement of the Chapter 11 Case, and begin the process of an orderly liquidation. Among other things, the First Day Pleadings seek relief aimed at sustaining the Debtor's now extremely limited business operations so that the Debtor's few remaining employees may maintain the Facility while the Debtor's assets are liquidated and "close out" the Debtor's remaining customer accounts so that accounts receivable can be

17180018.4                                    -2-

collected. I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to the Debtor's business; and (b) maximize and preserve the value of the Debtor's bankruptcy estate. I am familiar with the Debtor's day-to-day operations, financial condition, business affairs and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge, (b) my review of relevant documents, (c) information provided to me by other members of the Debtor's management team or professionals retained by the Debtor, or (d) my opinion based on experience and knowledge of the Debtor's operations and financial condition. If called upon, I could and would testify competently to the facts set forth herein.

**A.    General Background on the Debtor**

7.    Beginning in 2014, the Debtor began incurring significant operating expenses in connection with the reorganization and expansion of its business. Specifically, the Debtor invested significant capital into the Facility, which relied upon new technologies that required greater capital investments than the Debtor initially expected. Also beginning in 2015, the Debtor was impacted by the downturn in the price of oil, plastic and other related commodities. The low market prices of oil, oil-based plastics and other related commodities have forced the Debtor to lower the prices that it sells its recycled plastic materials for.

8.    As a result of the higher than expected one-time costs of its investment in the Facility, as well as the reduced profitability of its business due to low commodity prices, the Debtor has incurred significant trade debt and has struggled to meet the obligations owed to its secured lender.

9.    Currently, the Debtor is no longer able to consistently generate a profit from its operations, and in 2015 it operated at a significant loss. As a result, the Debtor has incurred

significant debts.  The Debtor owes: its trade creditors approximately $519,613; its first-priority secured lender, The PrivateBank and Trust Company ("PrivateBank"), approximately $13,635,360.21; and additional amounts to Secured Trade Creditors (defined below).  The non-debtor affiliates are also obligors for the debt owed to PrivateBank.

**B.     The Debtor's Secured Debt**

10.     As set forth above, the Debtor's primary secured creditor is PrivateBank.  As of the Petition Date, PrivateBank holds a secured claim in the approximate amount of $13,635,360.21 (the "PrivateBank Claim").  Attached as an exhibit to the Cash Collateral Motion (defined below) are copies of the Loan Agreement, all amendments to the Loan Agreements, and certain other related documents (together, the "Loan Documents").  Under the terms of the Loan Documents, the Debtor is liable to PrivateBank under four separate loans (together, the "PrivateBank Loans"):

   a.  The first PrivateBank Loan (the "First Term Loan") is a term loan in the face amount of $8,500,000 of which $4,833,320.00 is currently outstanding, the first term loan bears interest at a rate 3.75% above LIBOR and matures on January 17, 2019.

   b.  The second PrivateBank Loan (the "Second Term Loan") is a term loan in the face amount of $4,000,000 of which $3,333,333.40 is currently outstanding, the second term loan bears interest at a rate 3.75% above LIBOR and matures on January 17, 2019.

   c.  The third PrivateBank Loan (the "Third Term Loan") is a term loan in the face amount of $1,500,000 of which $1,400,000.00 is currently outstanding, the third term loan bears interest at a rate 3.75% above LIBOR and matures on January 17, 2019.

   d.  The fourth and final PrivateBank Loan (the "LOC Loan") is a line of credit with a maximum borrowing amount of the lesser of $5,000,000 or a calculation of the Debtor's and certain of its non-debtor affiliates' borrowing base under the Loan Documents.  The Debtor currently owes $4,068,706.81 under the LOC Loan.  The LOC Loan bears interest at a rate 3.75% above LIBOR.

17180018.4                                      -4-

11. The PrivateBank Claim is secured by a blanket lien (the "PrivateBank Lien") on all of the Debtor's assets (the "Prepetition Collateral") as well as by liens on the assets of certain non-debtor affiliates. Except as otherwise described in the First Day Declaration, the PrivateBank Lien generally has first-priority among the other competing security interests in the Debtor's assets. Substantially all of the Debtor's cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtor in any account or accounts with PrivateBank or the Debtor's other banks, and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of PrivateBank within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

12. As of the Petition Date, the Debtor believes that (i) PrivateBank's first-priority lien on the Prepetition Collateral is a valid, binding, perfected, enforceable lien and is not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the amount of the PrivateBank Claim against the Debtor constitutes a legal, valid and binding obligation, enforceable in accordance with the terms of the applicable loan documents and other applicable documents (other than in respect of the automatic stay arising under section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any portion of the claim exist, and no portion of the claim is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the PrivateBank Claim against the Debtor constitutes an allowable secured claim. The Debtor does not have any claims, counterclaims, causes of action, defenses or setoff rights relating to the Loan Documents, the PrivateBank Claim or the PrivateBank Lien against PrivateBank and its respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants,

predecessors in interest, successors and assigns.

13. In addition to the PrivateBank Claim, certain of the Debtor's trade creditors that have sold or leased equipment to the Debtor and certain banks that have financed the Debtor's acquisition of that equipment (together, the "Secured Trade Creditors") hold claims against the Debtor that are secured by the equipment. Although the Secured Trade Creditors claims are secured by the equipment and the proceeds thereof, the Secured Trade Creditors' claims are not secured by all of the Debtor's cash.

14. PrivateBank consents to the use of the Cash Collateral subject to the terms set forth in the *Motion Of The Debtor and Debtor In Possession Under 11 U.S.C. §§ 361 And 363 And Rule 4001 Of The Federal Rules Of Bankruptcy Procedure For Entry Of An Order (I) Authorizing The Debtor's Use of Cash Collateral On An Interim Basis, (II) Granting Adequate Protection To The Debtor's Prepetition Secured Lender, And (III) Scheduling A Final Hearing To Consider The Debtor's Use Of Cash Collateral* (the "Cash Collateral Motion") filed contemporaneously herewith.

### C. The Debtor's Pre-Petition Date Efforts to Restructure Its Debts

15. As a consequence of its financial difficulties, prior to the Petition Date, the Debtor made extensive efforts to preserve the going-concern value of its business. Among other things, the Debtor attempted to modify its operations to increase profitability, solicit investors to recapitalize the business, and solicit offers for the sale of its business as a going-concern. Unfortunately, none of the Debtor's efforts were successful and the Debtor was unable to turn a steady profit on its business or find an investor or buyer willing to acquire the business as a going-concern. As such, the Debtor's management determined in the sound exercise of its reasonable business judgment that the best course of action to maximize its creditors' recovery

was to cease operations and liquidate its assets.

16. The Debtor has already begun the process of reducing its workforce and ceasing operations so that it will stop incurring additional debt that it will not be able to repay. Among other things, the Debtor reduced the number of its employees and reduced the number of shifts operating at the Facility in early 2016. Further, on May 13, 2016, the Debtor terminated another 22 employees, bringing its active workforce down to just three employees.

17. The Debtor has also identified Yellen Partners, LLC ("Yellen") as an auctioneer that will be able to conduct an auction of its assets that will maximize their value and the recovery of the Debtor's creditors in this case. The Debtor reached out to multiple auctioneers and solicited bids related to both the sale of the Debtor's assets as well as certain excess equipment owned by the Debtor's non-debtor affiliates. Two auctioneers provided bids to the Debtor and the Debtor's management selected Yellen as the auctioneer offer to liquidate the Assets on the best terms. Among other things, the Debtor's management selected Yellen because it offered the highest minimum guarantee and was seeking the lowest commission retained from the proceeds of the Debtor's assets.

**D.   Facts Relevant to the First Day Pleadings**

18. Concurrently with the filing of the Petition, the Debtor filed the First Day Pleadings, which request various forms of relief. Generally, the First Day Pleadings have been designed to meet the Debtor's goals of: (a) working toward a prompt liquidation of the Debtor's assets for the benefit of the Debtor's creditors; (b) creating a "soft landing" in bankruptcy to ensure that cash collateral may be used, employee obligations are honored, utility service is maintained, and cash flow is not interrupted during the pendency of the Chapter 11 Case; and (c) establishing procedures for the smooth and efficient administration of the Chapter 11 Case.

19. I have reviewed and discussed with the Debtor's counsel each of the First Day Pleadings filed contemporaneously herewith (including the exhibits thereto and supporting memoranda) and incorporate by reference the factual statements set forth in the First Day Pleadings. It is my belief that the relief sought in each of the First Day Pleadings is tailored to meet the goals described above and, ultimately, will be critical to the Debtor's ability to achieve a successful reorganization.

20. It is my further belief that, with respect to the Cash Collateral Motion, the relief requested is essential for the Debtor so that it may fund the orderly liquidation of its assets. The Debtor has been unable to obtain the liquidity necessary to continue their business operations from any other source. In fact, owing to the highly leveraged nature of the Debtor's business operations, it would have been virtually impossible to find any party willing to provide financing to the Debtor on reasonable business terms.

21. In regard to authority to pay discrete prepetition claims or continue selected programs (*e.g.*, the First Day Pleadings seeking relief related to the Debtor's obligations to their employees), the relief requested is essential to the Debtor's orderly liquidation and necessary to avoid immediate and irreparable harm to the Debtor's employees. Impairment of the Debtor's ability to pay its remaining employees would clearly imperil the Debtor's orderly liquidation and would undermine any chance of preserving the underlying value of the Debtor's bankruptcy estate.

[*remainder of page intentionally left blank*]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2016

                                                  Gregory L. Janson

## Notice

This declaration has been served upon: (i) the Office of the United States Trustee, (ii) PrivateBank, (iii) PrivateBank's counsel, (iv) the Debtor's other secured trade creditors, and (v) the Debtor's twenty largest unsecured creditors.  In light of the nature of the declaration, the Debtor submits that no further notice is necessary.  The Debtor or its proposed claims agent, UpShot, will file a separate certificate of service.