UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
QRS Recycling of Georgia, LLC,[1]               :     Case No. 16-58837
                                                :
              Debtor.                           :
---------------------------------------------------------x

**APPLICATION OF THE DEBTOR AND DEBTOR
IN POSSESSION FOR ENTRY OF AN ORDER UNDER 28 U.S.C. § 156(C) AND
RULE 2002 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION
OF UPSHOT SERVICES LLC AS NOTICING, CLAIMS AND BALLOTING AGENT
IN THIS CHAPTER 11 CASE *NUNC PRO TUNC* TO THE PETITION DATE**

QRS Recycling of Georgia, LLC (the "Debtor"), by and through its undersigned counsel, hereby applies (the "Application") under 28 U.S.C. § 156(C) and rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order authorizing the Debtor to retain UpShot Services LLC ("Upshot") as its claims, noticing and balloting agent.  In support of the Application, the Debtor relies upon and incorporates by reference both the *Declaration of Gregory L. Janson In Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") and the *Declaration of Travis Vandell In Support of Application of the Debtor and Debtor In Possession for Entry of an Order Under 28 U.S.C. § 156(c) and Rule 2002 of the Federal Rules of Bankruptcy Procedure Authorizing and Approving the Employment and Retention of Upshot Services LLC as Noticing, Claims and Balloting Agent In This Chapter 11 Case Nunc Pro Tunc to the Petition Date* (the "Vandell Declaration"), a copy of which is attached hereto as **Exhibit A**.  In further support of the Application, the Debtor respectfully

---

[1]   The last four digits of the Debtor's taxpayer identification numbers are 5278.  The Debtor's mailing address, solely for purposes of notices and communications, is 120 Hollow Tree Lane, Atlanta, Georgia 30354.

1

17187880v3

represents as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## Background

2. On May 20, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"). The Debtor continues to manage and operate its business as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. To date, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this chapter 11 bankruptcy case (the "Chapter 11 Case"). No trustee or examiner has been appointed in the Chapter 11 Case.

3. As set forth in the First Day Declaration, the Debtor operates a recycling facility located in Atlanta, Georgia. Immediately prior to the Petition Date, the Debtor employed 25 people at the facility where it focused on processing and recycling mixed, post-consumer plastics. The Debtor's recycling operations were complemented by the operations of its non-debtor affiliates, QRS, Inc., Re-Poly, LLC, QRS Holding Company, QRS Export, Inc., QRS Direct, LLC, Rhino, LLC and QRS Re-Poly, LLC. Together, with the operations of its non-debtor affiliates in Baltimore, MD, Louisville, KY, New Albany, IN and St. Louis, MO, the Debtor was part of one of the largest recycling networks in the country, processing thousands of tons of post-consumer plastic, paper, cardboard, metal and commercial dry waste.

4. As a result of the higher than expected one-time costs, as well as the reduced

17187880v3

profitability of their businesses due to low commodity prices, the Debtor and its non-debtor affiliates have incurred significant trade debt and have struggled to meet the obligations owed to their secured lender.  Currently, the Debtor is no longer able to consistently generate a profit from its operations, and in 2015 it operated at a significant loss.  As a result, the Debtor has incurred significant debts.  The Debtor owes: its trade creditors approximately $519,613; its first-priority secured lender, The PrivateBank and Trust Company ("PrivateBank"), approximately $13,635,360.21; and additional amounts to Secured Trade Creditors (defined below).  The non-debtor affiliates are also obligors for the debt owed to PrivateBank.

5. As a consequence of its financial difficulties, the Debtor has made the difficult decision to cease operations and liquidate its assets via a sale under section 363 of the Bankruptcy Code.  The Debtor believes that this will maximize the recovery of its creditors.  As an initial matter, it is better for the Debtor to cease operations now and stop incurring additional debt that it will not be able to repay.  Further, the Debtor believes that the equipment auctioneer it has identified to conduct a sale of its assets, Yellen Partners, LLC, will be able to sell the equipment for a higher price via a sale under section 363 of the Bankruptcy Code than it otherwise would.  This is because buyers will pay a premium if there is a court order clarifying that the assets are sold "free and clear" of liens, claims and encumbrances.

## Relief Requested

6. The Debtor seeks entry of an order authorizing and approving the employment and retention of UpShot as the official claims, noticing, and balloting agent in connection with the Chapter 11 Case, pursuant to 28 U.S.C. § 156(c), and its appointment as an agent of the Court under Bankruptcy Rule 2002, under the proposed terms of employment as set forth in the services agreement between UpShot and the Debtor, dated as of May 13, 2016 (the "Engagement

3

17187880v3

Letter"), a copy of which is attached hereto as **Exhibit B**.  Because it is necessary to immediately begin serving notices, including those in the "First Day Pleadings," the Debtor is requesting that the Court approve UpShot's retention *nunc pro tunc* to the Petition Date.

7. The Debtor requires the assistance of a third-party claims, noticing and balloting agent in the Chapter 11 Case due to the large and complex nature of the Chapter 11 Case.  There are approximately 100 parties in interest in the Debtor's Chapter 11 Case.  Accordingly, it is cost-efficient for the Debtor to use the services of a third-party entity with expertise in the areas of claims, noticing, website hosting, and balloting.  It would be cost prohibitive for the Debtor to use its bankruptcy counsel to provide these services.  Further, the Debtor does not have the capacity or the resources to provide these services using its internal resources in a timely manner, if at all.  Quite simply, the Debtor is in the process of reducing its staff to a skeletal level while its assets are being sold, and the employees who will remain need to focus on operating the Chapter 11 Case and the sale process, not on mailing notices, compiling claims databases and tabulating ballots.

8. The Debtor believes that the retention of UpShot upon the competitive terms set forth below, and in the Engagement Letter, is in the best interests of the Debtor, its bankruptcy estate, and the Debtor's creditors.

9. The appointment of UpShot will also relieve the Office of the Clerk of the Bankruptcy Court (the "Clerk's Office") of certain administrative burdens, including the service of notices on a large mailing matrix and the processing of many proofs of claim asserted in the Chapter 11 Case.

## Basis for Relief Requested

10. Under Bankruptcy Rule 2002, the Court may direct that a person other than the

4

Clerk of the Court serve notices upon creditors and parties in interest.  Moreover, 28 U.S.C. § 156(c), which governs the staffing and expenses of the Court, authorizes the Court to procure the services of third parties to assist with noticing and other chapter 11 administrative matters:

> Any court may utilize facilities or services, either on or off of the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the cost of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C.  § 156(c).

## Application

**Employment of UpShot**

11. UpShot has substantial experience in, among other things, noticing, ballot tabulation, claims processing, and claims reconciliation.  Bankruptcy courts have recently authorized debtors to retain Upshot to provide claims, noticing and/or balloting services in a number other chapter 11 bankruptcy cases.  See, e.g., In re: Allied Nevada Gold Corp., et al. (Bankr. D. Del. 2015; Case No. 15-10503); In re: Allonhill, LLC (Bankr. D. Del. 2014, Case No. 14-10663); In re: Amarillo Biosciences, Inc. (Bankr. E.D. Tex. 2013, Case No. 13-20393); In re: AMBT Liquidating Corporation (f/k/a Ambient Corporation) (Bankr. D. Del. 2014, Case No. 14-11791); In re: Argent Energy (Canada) Holdings, Inc., et al. (Bankr. S.D. Tex. 2016; Case No. 16-20060); In re: ATK Oilfield Transportation Inc., et al. (Bankr. W.D. Tex. 2016, Case No. 16-70042); In re: Atna Resources, Inc., et al. (Bankr. D. Co. 2015; Case No. 15-22848); In re: Color Star Growers of Colorado, Inc., *et al.* (Bankr. E.D. Tex. 2013, Case No. 13-42959); In re: Compressus, Inc. (Bankr. D. Del. 2015, Case No. 15-10670); In re: DECA Financial Services, LLC (Bankr. S.D. Ind., Case No. 14-01093); In re: DynaVox Inc., et al. (Bankr. D. Del. 2014;

5

Case No. 14-10791); In re: Endeavour Operating Corporation, et al. (Bankr. D. Del. 2014; Case No. 14-12308); In re: Hi-Way Equipment Company LLC, *et al.* (Bankr. N.D. Tex. 2013, Case No. 13-41498); In re: Mercantile Bancorp, Inc. (Bankr. D. Del. 2013, Case No. 13-11634); In re: Monroe Hospital, LLC (Bankr. S.D. Ind., Case No. 14-07417); In re: Morris|Schneider|Wittstadt, Va., PLLC, et al., (Bankr. E.D. Va. 2015; Case No. 15-33370); In re: Oakland Physicians Medical Center, L.L.C. (Bankr. E.D. Mich. 2015; Case No. 15-51011); In re: Omtron USA, LLC d/b/a Townsends, a Delaware Limited Liability Company (Bankr. M.D. NC 2012, Case No. 12-81931); In re: Palmaz Scientific, Inc., et al., (Bankr. W.D. Tex. 2016; Case No. 16-50552); In re: Pitt Penn Holding Company, Inc., et al. (Bankr. D. Del. 2009, Case No. 09-11475); In re: S&S Steel Services, Inc. (Bankr. S.D. Ind. 2015; Case No. 15-07401); In re: Saab Cars North America, Inc. (Bankr. D. Del. 2012, Case No. 12-10344); In re: Saladworks, LLC, (Bankr. D. Del. 2015, Case No. 15-10327); In re: Suntech America, Inc., et al. (Bankr. D. Del. 2015, Case No. 15-10054); In re: Team Express Distributing, LLC (Bankr. W.D. Tex. 2015; Case No. 15-53044); In re: Tonzof, Inc. (Bankr. D. Co. 2015; Case No. 15-23703); In re: University General Health System, Inc., et al. (Bankr. S.D. Tex. 2015, Case No. 15-31086); In re: Variant Holding Company, LLC, et al. (Bankr. D. Del. 2014; Case No. 14-12021); In re: Western Maryland Lumber, Inc., et al. (Bankr. D. Md. 2014; Case No. 14-19274).

12. UpShot has expertise in bankruptcy case management as well as expertise in electronic, internet, and computer based methods and systems used within bankruptcy cases for communication purposes. As noted above, the creditor matrix in the Chapter 11 Case includes approximately 100 parties in interest to whom notices must be sent. The Debtor also desires a website to communicate fully and efficiently with its creditors. In addition, the Debtor anticipates that a large volume of proofs of claim may be filed that will need to be processed.

6

17187880v3

The Debtor will also need a balloting and solicitation agent when it commences the process of soliciting votes on a chapter 11 plan of liquidation. UpShot can provide the Debtor with the assistance it needs to manage and address these and the many other related administrative issues that will likely arise in the Chapter 11 Case.

13. In addition, the large number of creditors and parties in interest will undoubtedly impose heavy administrative and other burdens on the Court and the Clerk's Office. The Debtor believes that the employment of UpShot to serve as claims and noticing agent will: (a) relieve the Clerk's Office of a significant administrative burden; (b) avoid delay in processing proofs of claim and interests; (c) reduce legal fees that would be otherwise incurred in connection with the retrieval of proof of claim copies from the Clerk's Office and responding to numerous claim-related inquiries; and (d) reduce costs of notice to parties and provide an efficient medium to communicate case information.

**Scope of Services to be Provided by UpShot**

14. The scope of services to be provided by UpShot to the Debtor includes:

a. Prepare and serve required notices and documents in the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court including, (i) notice of the commencement of the Chapter 11 Case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of liquidation, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case;

b. Maintain an official copy of the Debtor's Schedules of Assets & Liabilities and Statement of Financial Affairs (together, the "Schedules") listing the Debtor's known creditors and the amounts owed thereto;

c. Maintain (i) a list of all potential creditors, equity holders and other

parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

d. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f. For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g. Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h. Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc*.), (vi) the Debtor, and (vii) any disposition of the claim;

i. Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

j. Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

8

k.      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to UpShot's offices, not less than weekly;

l.      Perform and assist the Debtor and its retained professionals with such other tasks, duties and projects they deem necessary to the overall operation of the Chapter 11 Case;

m.      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

n.      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

o.      Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

p.      If the Chapter 11 Case are converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to UpShot of entry of the order converting the Chapter 11 Case;

q.      Thirty (30) days prior to the close of the Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed Order dismissing UpShot and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Case;

r.      Within seven (7) days of notice to UpShot of entry of an order closing the Chapter 11 Case, provide to the Court the final version of the claims register as of the date immediately before the close of the cases; and

s.      At the close of the Chapter 11 Case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration or (ii) any other location requested by the Clerk's Office.

15.      Upon the Court's entry of such an order, UpShot will comply with all requests of the Clerk's Office and follow the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c). The Debtor also requests that the Clerk's Office release all filed claims directly to UpShot at that time.

9

17187880v3

16. In connection with performance of the services listed above, the Debtor understands and UpShot acknowledges that, among other things:

a. UpShot will not consider itself employed by the United States government and shall not seek any compensation from the United States government for the services provided in the Chapter 11 Case;

b. UpShot will not be an agent of the United States and will not act on behalf of the United States; and

c. UpShot will not employ any past or present employees of the Debtor in connection with its work in the Chapter 11 Case.

**Terms of Retention**

17. Following arm's-length negotiations, the Debtor and UpShot agreed to mutually acceptable terms of engagement. The terms of UpShot's engagement with respect to the provisions of claims agent, noticing, balloting and website services are set forth in full in the Engagement Letter.

18. The Debtor proposes that compensation be provided to UpShot for services rendered as set forth in detail within the Engagement Letter (the "Fee Structure"), which is incorporated herein for all purposes, subject to the terms and conditions set forth in any order authorizing use of cash collateral and to the extent such payments are provided for in a budget approved by PrivateBank

19. UpShot's hourly-based services for its work in the Chapter 11 Case will be charged at the following hourly rates:

| | |
|---|---|
| Clerical | $25.00 per hour |
| Case Assistant | $60.00 per hour |
| IT Manager | $125.00 per hour |
| Case Consultant | $150.00 per hour |
| Case Director | $170.00 per hour |

10

17187880v3

20. Additionally, UpShot's case management and website-related services will include services to the Debtor such as website hosting, license fees and database services, noticing, postage and copying, among other services, at the costs set forth in the Engagement Letter.

21. The Debtor believes that the proposed rates to be charged by UpShot are reasonable and appropriate for services of this nature.

22. In addition to the above compensatory fees for professional services rendered by UpShot personnel, UpShot will seek reimbursement for reasonable and necessary expenses (subject to limits and approvals within the Engagement Letter) incurred in connection with the Chapter 11 Case, including transportation costs, lodging, food, telephone, copying and messenger services.  In addition, UpShot may use third party vendors for certain services, which will be billed to the Debtor at the cost incurred by UpShot.

23. UpShot is seeking court approval for a retainer in the amount of $3,000 (the "Retainer") from the Debtor, which has already been paid by the Debtor and is being held by UpShot.

24. The Fee Structure is consistent with and typical of compensation arrangements entered into by UpShot and other comparable firms in connection with the rendering of similar services under similar circumstances.  The Debtor believes that the Fee Structure is in fact reasonable, market-based, and designed to fairly compensate UpShot for its work and to cover fixed and routine overhead expenses.

25. As UpShot is not being retained in the Chapter 11 Case as a "professional person" under section 327(a) of the Bankruptcy Code, and because UpShot will only be charged with administrative functions in the Chapter 11 Case, the Debtor does not believe that UpShot should

11

be required to file fee applications or otherwise seek Court approval for payment for fees earned or reimbursement for expenses incurred.

26. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the Debtor hereby requests that the fees to be charged by UpShot together with UpShot's necessary and actual expenses be allowed as administrative expenses of the Debtor's bankruptcy estate.

27. Therefore, subject to the terms and conditions set forth in any order authorizing use of cash collateral and to the extent such payments are provided for in a budghet approved by PrivateBank, the Debtor proposes to pay UpShot, in the ordinary course and without need for further notice or order of the Court, its billing rates as set forth above and in the Engagement Letter and to reimburse UpShot for its expenses according to its customary reimbursement policies and in accordance with the Engagement Letter.

28. The Debtor's bankruptcy counsel has agreed to ensure that UpShot's services will be appropriately monitored so that UpShot will not engage in any unnecessary services or generate any unnecessary costs or expenses.

**Disinterestedness**

29. There are no arrangements between UpShot and any other entity for the sharing of compensation received or to be received in connection with the Chapter 11 Case.

30. The Debtor does not owe UpShot any amount for services performed or expenses incurred prior to the Petition Date and, thus, UpShot is not a prepetition creditor of the Debtor.

31. UpShot is not being retained in the Chapter 11 Case as a "professional person" under section 327(a) of the Bankruptcy Code. However, to the best of the Debtor's knowledge, and except as to any connection that may be set forth in the Vandell Declaration, (a) UpShot is a "disinterested person" under sections 101(14) and 1107(b) of the Bankruptcy Code, and (b) UpShot does not (i) hold or represent any interest adverse to the Debtor or its bankruptcy estate;

12

(ii) have any connection with the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee; or (iii) employ any person that is related to a judge of this Court or the United States Trustee.

### **Notice**

32.     This Application has been served upon: (i) the Office of the United States Trustee, (ii) PrivateBank, (iii) PrivateBank's counsel, (iv) the Debtor's other secured trade creditors, (v) the Debtor's twenty largest unsecured creditors, and (vi) UpShot.  In light of the nature of the relief requested and the expedited basis therefore, the Debtor submits that no further notice is necessary.  The Debtor or its proposed claims agent, UpShot, will file a separate certificate of service.

[*remainder of page intentionally left blank*]

17187880v3

WHEREFORE, based on the arguments and authorities set forth above, the Debtor respectfully requests that this Court enter an order authorizing the Debtor to employ UpShot pursuant to 28 U.S.C. § 156(c) for the purposes and on the terms and conditions set forth herein and in the Engagement Letter, and granting such other and further relief as this Court deems just and necessary.

Dated: May 20, 2016                                  Respectfully submitted,

/s/ Daniel M. Simon
James R. Irving (KY Bar No. 96048)
(admission pending *pro hac vice*)
BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone:    (502) 587-3606
Facsimile:     (502) 540-2215
E-mail:         jirving@bgdlegal.com

-and-

Daniel M. Simon (GA Bar No. 690075)
DLA Piper LLP (US)
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone:    (404) 736-7871
Facsimile:     (312) 251-2854
E-mail:         daniel.simon@dlapiper.com

*Proposed counsel to the Debtor QRS Recycling of Georgia, LLC*

17187880v3