**IT IS ORDERED as set forth below:**



**Date: June 22, 2016**

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

---------------------------------------------------------x
In re:                                                                     :         Chapter 11
                                                                                 :
QRS Recycling of Georgia, LLC,[1]              :         Case No. 16-58837
                                                                                 :
              Debtor.                                                  :
---------------------------------------------------------x

**ORDER GRANTING MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION
UNDER 11 U.S.C. §§ 105 AND 363 AND RULES 2002, 6004, AND 9007 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN
ORDER: (I) AUTHORIZING THE DEBTOR TO EMPLOY YELLEN PARTNERS, LLC
AS AUCTIONEER; (II) AUTHORIZING THE DEBTOR TO SELL CERTAIN ASSETS
WITH AUCTIONEER VIA AUCTION FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtor and Debtor In*

---

[1]  The last four digits of the Debtor's taxpayer identification numbers are 5278.  The Debtor's mailing address, solely for purposes of notices and communications, is 120 Hollow Tree Lane, Atlanta, Georgia 30354.

1

17511966v4

*Possession Under 11 U.S.C. §§ 105 and 363 and Rules 2002, 6004, and 9007 of the Federal Rules of Bankruptcy Procedure for Entry of an Order: (I) Authorizing the Debtor to Employ Yellen Partners, LLC as Auctioneer; (II) Authorizing the Debtor to Sell Certain Assets with Auctioneer Via Auction Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (III) Granting Related Relief* [Docket No. 14] (the "<u>Motion</u>")[2] and the *Supplement to the Motion of the Debtor and Debtor In Possession Under 11 U.S.C. §§ 105 and 363 and Rules 2002, 6004, and 9007 of the Federal Rules of Bankruptcy Procedure for Entry of an Order: (I) Authorizing the Debtor to Employ Yellen Partners, LLC as Auctioneer; (II) Authorizing the Debtor to Sell Certain Assets with Auctioneer Via Auction Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (III) Granting Related Relief* [Docket No. 71] (the "<u>Supplement</u>") both filed by QRS Recycling of Georgia, LLC (the "<u>Debtor</u>"); the Court having reviewed the Motion; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances; and the Court having determined that good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Debtor is authorized to enter into the amended Consulting Agreement with Yellen, a copy of which is attached hereto as **<u>Exhibit A</u>**.

3. Any and all objections and responses to the Motion or the relief requested therein that have not been withdraw, waived, resolved, or settled as set forth herein or set forth in a

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Motion.

2

17511966v4

stipulation presented to the Bankruptcy Court, and all reservations of rights included therein, are hereby overruled in all respects and denied.

4. The Debtor's proposed process for the Sale of the Assets via the Auction in accordance with the procedures described in the Motion is hereby approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, and the Debtor is authorized to take any and all actions as are necessary or appropriate to effectuate the Sale.

5. The retention, employment, and compensation of Yellen as auctioneer to the Debtor in connection with the proposed process for the Sale of the Assets via the Auction is approved. Yellen is authorized without further order of this Court to reimburse itself the Guaranteed Amount, pay the Base Fee and retain the buyer's premium as provided in the Agreement. The payment of the Base Fee and retention of buyer's premium shall be subject only to review pursuant to section 328(a) of the Bankruptcy Code and shall not be subject to the standard fee applications and shall be compensated in accordance with the procedures set forth in the Motion and Agreement.

6. Pursuant to section 363(f) of the Bankruptcy Code, the winning bidders at the Auction shall take title to the Assets free and clear of all liens, claims and encumbrances, with any and all such liens attaching to the proceeds of the Sale with the same validity, priority, force, and effect such liens had on the Assets immediately prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtor and any interested party.

7. Any holder of a lien, claim or encumbrance on the Assets that has not objected, to the Sale of the Assets is deemed to have consented to such Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

8. For the avoidance of doubt, the Assets to be marketed, auctioned and sold does

17511966v4

not include the equipment, security interests and lien rights of Caterpillar Financial Services Corporation ("CFSC") regarding one (1) 272D Skid Steer Loader, Serial No. B5W01147 and one (1) 272D Skid Steer Loader, Serial No. B5W01178. Within thirty (30) days from the completion of its process or protocol for liquidating these two pieces of equipment, CFSC shall file with the Court a declaration that details: (i) the amounts due from the Debtor on account of each piece of equipment; (ii) the sales price for that piece of equipment; (iii) the sales cost associated with each piece of equipment; and (iv) the net sales proceeds for that piece of equipment, if any. Within ten (10) days from the filing of said declaration CFSC shall remit to the Debtor any excess proceeds that may remain after the sale of the equipment and payment for the expenses of sale.

9. The sale of any Asset shall be deemed an arms'-length transaction and the winning bidder will be deemed a good faith purchaser under section 363(m) of the Bankruptcy Code and shall be entitled to the protections afforded to a good faith buyer thereunder.

10. The consideration provided by the winning bidder for the Assets under the Sale will be deemed fair and reasonable, and the Sale shall not be subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

11. Nothing in this Order shall prevent the Debtor, in its sole discretion, from seeking Court approval at any time of any proposed transaction upon notice and a hearing.

12. The sale transactions consummated pursuant to this Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or

4

17511966v4

contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order; and each and every federal, state, and local governmental agency or department is directed to accept this Order as sole and sufficient evidence of the transfer of title to any particular purchaser, and such agency or department shall rely upon this Order in consummating the transactions contemplated hereby.

13. The requirements set forth in Bankruptcy Rule 6004 are satisfied by the contents of the Motion or otherwise deemed waived; provided, however, that subject to Bankruptcy Rule 6004(f) the Debtor shall file a report of the Sale of the Assets within fourteen (14) days of the completion of such Sale.

14. The Debtor is authorized to take all appropriate actions and execute all documents necessary to implement the relief granted in this Order or appropriate to effectuate the disposition of the Assets pursuant to the terms of this Order.

15. The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

16. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Utility Order.

[END OF DOCUMENT]

17511966v4

Proposed and Tendered By:

/s/ Daniel M. Simon
Daniel M. Simon (GA Bar No. 690075)
DLA Piper LLP (US)
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone:    (404) 736-7871
Facsimile:    (312) 251-2854
E-mail:       daniel.simon@dlapiper.com

-and-

James R. Irving (KY Bar No. 96048)
(admitted *pro hac vice*)
BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone:    (502) 587-3606
Facsimile:    (502) 540-2215
E-mail:       jirving@bgdlegal.com

*Counsel to the Debtor QRS Recycling of Georgia, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that Upshot will serve the notice parties described in the notice procedures motion with a true and correct copy of the foregoing document on this 22nd day of June, 2016.

/s/ Dan Simon
Dan Simon

6

17511966v4

# **EXHIBIT A**

# **(AGREEMENT)**

17511966v4

# CONSULTING AGREEMENT

This Consulting Agreement, dated as of June 15, 2016 (together with any Schedules, Exhibits and attachments hereto, collectively, the "Agreement"), is made by and between Yellen Partners, LLC, an Illinois limited liability company with a principal place of business at 570 Lake Cook Road, Suite 125, Deerfield, IL 60015 (the "Consultant") and QRS Recycling of Georgia, LLC, a Kentucky limited liability company with a principal place of business at 120 Hollow Tree Lane SW, Atlanta, GA 30354 (the "Company").

## WITNESSETH:

**WHEREAS**, the Company operated and currently has access to a facility at 120 Hollow Tree Lane SW, Atlanta, GA 30354 (the "Facility") at which various equipment and other assets (including those set forth on **Exhibit A** hereto) (collectively, the "Equipment") are located;

**WHEREAS**, the Company intends to file a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Court") by which the Company will commence a chapter 11 bankruptcy case (the "Bankruptcy Case"); and

**WHEREAS**, Consultant is willing to serve as the Company's consultant, for the purpose of providing such consulting services, upon the terms and conditions and in the manner set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1.    DEFINITIONS**

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

1.1    Except as set forth below, "Assets" shall mean all of the Company's tangible personal property located at the Facility, including but not limited to inventory, equipment and machinery, and shall specifically include at a minimum those items set forth on **Exhibit A** hereto; excluding however (a) fixtures and (b) assets in which other secured lenders have a first priority security interest.

1.2    "Auction" shall mean an auction of the Assets which auction the Consultant anticipates will occur before August 31, 2016 (as may be modified by agreement of the Company and Consultant).

1.3    "Removal Date" shall be a date no later than September 30, 2016, unless extended pursuant to mutual agreement between Consultant and the Company.

Execution

1.4 "Sale" shall mean a liquidation sale of all the Assets to be conducted by Consultant on behalf of the Company, to be followed at Consultant's discretion with the Auction. The Sale shall be approved by the Court under section 363 of the Bankruptcy Code.

1.5 "Sale Expenses" shall mean direct operating expenses incurred, but does not include any occupancy expenses with regard to the Facility (which as outlined in Section 8.1 hereof shall be the Company's responsibility through the Removal Date).

1.6 "Sale Term" shall mean the period of time beginning with the execution of this Agreement and ending on the Removal Date.

1.7 "Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

1.8 "Supervisors" shall mean the individuals that will provide Services as set forth in Sections 2.2 and 2.3 of this Agreement.

## 2. RETENTION

2.1 Subject to the entry of the Approval Order (defined below), the Company hereby retains Consultant, and Consultant hereby agrees to serve, as an independent consultant to the Company in connection with the conduct of the Sale as set forth herein. With respect to the Sale, Consultant shall serve as the Company's sole and exclusive consultant relative thereto throughout the Sale Term.

2.2 On the terms and conditions set forth herein, commencing after execution of this Agreement and satisfaction of the conditions precedent hereunder, Consultant shall provide the Company with the following Services with respect to the conduct of the Sale:

(i) provide one or more Supervisors as needed to supervise and conduct the Sale as further described in Section 2.3 below;

(ii) oversee the Sale and disposal of the Assets from the Facility; provided, however, the Consultant reserves the right to abandon in place at no cost to the Consultant any Assets that have not been sold or removed by the buyer thereof by the end of the Sale Term;

(iii) determine and implement commercially reasonable advertising (including brochures, web site listings and email notices) to sell the Assets;

(iv) provide such other related service deemed necessary or prudent by the Company and Consultant under the circumstances presented; and

(v) provide the Company with reporting and reconciliation of accounting information in form reasonably acceptable.

2.3 In connection with the Sale, Consultant shall directly retain and engage the Supervisors. The Supervisors are independent contractors engaged as an agent of Consultant,

2

and are not and shall not be deemed to be employees of the Company in any manner whatsoever. Sale Expenses shall include the Supervisors' compensation and expenses.

2.4     All sales of Assets shall be made by Consultant as agent in fact. Title to each of the Assets shall remain with the Company's bankruptcy estate throughout the Sale Term until payment is received from such purchaser.

2.5     Subject to this Agreement, Consultant shall be the sole party authorized to sell the Assets. The Assets will be sold in such lots as Consultant may determine.

2.6     Consultant is authorized to accept any reasonable means as payment for the Assets sold provided it is in immediately available funds and that such payment is consistent with the terms of the Approval Order.

2.7     Consultant shall sell the Assets "as is," without any representations of any kind or nature whatsoever, including as to merchantability or fitness, and without warranty or agreement as to the condition of such Assets. The Company acknowledges that Consultant is acting solely in the capacity of consultant and has no knowledge with respect to the fitness or usability of any of the Assets. The Company hereby indemnifies and holds Consultant harmless against any claim with regard to merchantability or use of the Assets.

### 3.     EXPENSES

3.1     Sale Expenses shall be subtracted from the proceeds of the Sale as set forth in Section 4 hereof. To the extent that Sale Expenses must be paid in advance of receipt of proceeds of the Sale, subject to satisfaction of the conditions precedent hereunder, Consultant shall advance payment of such Sale Expenses subject to recovery as provided in Section 4.2 below.

3.2     In the event that Consultant does not vacate the Facility on or before August 31, 2016, then Consultant shall pay the actual rent incurred by the Company for September (or any portion thereof), up to a maximum of $33,000, as a result of Consultant not vacating the premises on or before August 31. Consultant shall be entitled to reimbursement of the amount paid for September occupancy of the Facility from the proceeds of the Sale after payment of the Guaranteed Amount and reimbursement of the Base Fee.

### 4.     CONSULTANT'S FEES

4.1     Consultant hereby guarantees to the Company that the net proceeds of the Sale of the Assets shall be no less than $725,000 (the "Guaranteed Amount"). Subject to the satisfaction of the conditions set forth herein in all material respects, Consultant shall pay the Guaranteed Amount to the Company on the second business day after entry of the Approval Order.

4.2     After the Guaranteed Amount has been paid by the Consultant to the Company and after sufficient proceeds have been collected from the sale of the Assets to first reimburse Consultant for the payment of the Guaranteed Amount, Consultant shall be entitled to be paid the next available proceeds in the amount of $50,000 to reimburse Consultant as a base fee (the

3

Document      Page 11 of 18

"Base Fee"). Subject to Paragraph 3.2 above, any proceeds above $775,000 shall be paid 100% to the Company.

4.3 All proceeds of the sale of the Assets shall be deposited in a segregated sale proceeds account (the "Sale Proceeds Account") held for the benefit of the Company. Provided that the Guaranteed Amount has been paid to the Company, Consultant may withdraw proceeds from the Sale Proceeds Account to fund Sale Expenses as they become due, provided that any such amounts so withdrawn by Consultant shall be credited against the Consultant's Base Fee and reimbursement of the Guaranteed Amount.

4.4 Consultant shall be entitled to charge all buyers a reasonable a customary buyer's premium of not more than eighteen percent (18%), from which Consultant shall pay the online sales provider no more than three percent (3%), retain (without further order of Court) no more than thirteen percent (13%) and remit any balance (after payment to the online sales provider and retention of thirteen percent (13%) as outlined above) to the Company along with any proceeds of the Sale.

## 5. REPRESENTATIONS AND WARRANTIES OF CONSULTANT

5.1 Consultant hereby represents, warrants and covenants in favor of the Company as follows:

 (a) Consultant has taken all necessary action required to authorize the execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby;

 (b) This Agreement is a valid binding obligation of Consultant enforceable in accordance with its terms;

 (c) To the best of Consultant's knowledge, no action or proceeding has been instituted or threatened affecting the consummation of this Agreement or the transactions contemplated herein; and

 (d) Based upon the creditor list provided by the Company to Consultant, the Consultant has disclosed all known connections to the Company, its creditors and interested parties and, therefore, to its reasonable knowledge is "disinterested" so that it may be employed by the Company in the Bankruptcy Case.

## 6. REPRESENTATIONS AND WARRANTIES OF COMPANY

6.1 The Company hereby represents, warrants and covenants in favor of Consultant as follows:

 (a) Subject to the entry of the Approval Order, the Company has taken all necessary action required to authorize the execution, performance and delivery of this Agreement, and has taken all steps necessary and has good

4

and valid authority to consummate the transactions contemplated hereby, including the conduct of the Sale;

(b) The Company has good title to the Assets, and has the authority to convey its right, title and interest to the Assets to a purchaser thereof free and clear of any liens, claims or encumbrances;

(c) The Company shall provide notice of the intended sale of the Assets free and clear of liens, claims and encumbrances to any parties holding or asserting liens, claims or encumbrances against any of the Assets;

(d) Subject to the entry of the Approval Order, this Agreement is a valid and binding obligation of the Company enforceable in accordance with its terms; and

(e) Throughout the Sale Term, Consultant shall have the right to the use and occupancy of, and peaceful and quiet possession of, the Facility to conduct the Sale and to allow the removal of the Assets therefrom. The Company shall throughout the Sale Term maintain in good working order, condition and repair, at its sole expense, all heating systems, air conditioning systems, and all other mechanical devices reasonably necessary to allow for the conduct of the Auction and the removal of the Assets from the Facility.

## 7. AFFIRMATIVE DUTIES OF CONSULTANT

7.1 Consultant shall reimburse, indemnify, defend and hold the Company and its officers, directors, agents, and employees, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefore, by or on behalf of any person, arising out of Consultant's breach of this Agreement, as well as any claims asserted by the Consultant's employees or agents, including the Consultant's employees' or agents' payroll claims (wage claims, claims for taxes required to be withheld from wages, social security, etc.), or unemployment compensation claims.

7.2 Consultant shall provide sufficient labor and Supervisors for the set up and conduct of the Auction, including auctioneers, accounting support, and personnel to register bidders.

7.3 Consultant shall provide the Company with a preliminary accounting of the results of the Sale within fourteen days after completion of the Auction. No later than the Removal Date, Consultant shall deliver a final accounting to the Company, and shall deliver any funds due and payable at that time.

## 8. AFFIRMATIVE DUTIES OF COMPANY

8.1 The Company shall be solely liable for any expenses incurred in connection with the maintenance or operation of the Facility, including but not limited to occupancy costs, utilities, security, local telephone, trash services, property taxes and any other related costs.

5

8.2    Consultant shall prepare all reporting forms, certificates, reports and other documentation required in connection with the payment of applicable sales taxes to the appropriate taxing authorities and the Company shall process all of the foregoing and pay any such taxes same to the appropriate taxing authorities in accordance with applicable law.

8.3    Consultant shall be authorized to use each Company's name and logo in its advertising of the sale of the Assets and in its promotional materials.

## 9. CONDITIONS PRECEDENT

9.1    The willingness of Consultant and the Company to enter into the transactions contemplated under this Agreement, is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by the applicable party:

(a)    All representations and warranties hereunder shall be true and correct in all material respects, and no Event of Default (as defined below) shall have occurred as of the date hereof and as of the Sale Commencement Date;

(b)    Except as otherwise expressly stated herein, the Assets, in all material respects, shall be available for sale by Consultant; and

(c)    The Company shall have obtained the entry of an order (or orders) (the "Approval Order") from the Court in form reasonably acceptable to Consultant authorizing the sale of the Assets free and clear of liens, claims and encumbrances, authorizing the retention of Consultant on the terms set forth herein, including reimbursement of the Guaranteed Amount, payment of the Base Fee and retention of the buyer's premium as outlined herein, without further order of the Court, and granting Consultant a first priority security interest and lien upon the Assets to secure Company's obligations hereunder to Consultant upon payment of the Guaranteed Amount to The PrivateBank and Trust Company.

## 10. INSURANCE

10.1    The Company will maintain throughout the Sale Term liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the operation of the Facility, as well as casualty insurance on the Assets, each in an amount no less than its current policies, and shall cause Consultant to be an additional insured with respect to all such policies. The Company shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the gross negligence or willful misconduct of Consultant, or its employees, representatives, agents or Supervisors.

10.2    Consultant will maintain throughout the Sale Term a liability insurance policies

6

covering injuries to persons and property in or in connection with the conduct of the Auction in an amount no less than $1,000,000, and shall cause the Company to be an additional insured with respect to such policy.

**11.    DEFAULTS**

11.1    The following shall constitute "Events of Default" hereunder:

(a)    The failure by Consultant or the Company to perform any of the respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

(b)    Any representation or warranty made by the Company or Consultant proves untrue in any material respect as of the date made and throughout the Sale Term; or

(c)    The Sale is terminated, materially interrupted or impaired at the Facility for any reason other than (i) an Event of Default by Consultant or (ii) any other material breach or action by Consultant not authorized hereunder.

11.2    In the event of an Event of Default, the non-defaulting party may, in its discretion, elect to terminate this Agreement upon three (3) business day's written notice to the other party.

**12.    MISCELLANEOUS**

12.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally, sent by facsimile or by prepaid registered or certified mail, or by electronic mail, addressed as follows:

(i)    in the case of Consultant:
Yellen Partners
570 Lake Cook Road, Suite 125
Deerfield, IL 60015
Attn: Mark P. Naughton
Executive Vice President/General Counsel
Email: mnaughton@yellenpartners.com

(ii)    in the case of the Company:

QRS of Georgia, LLC
120 Hollow Tree Lane SW
Atlanta, GA 30354

With copies to:

James R. Irving
Bingham Greenebaum Doll LLP
3500 National City Tower

7

101 S. Fifth Street
Louisville, KY 40202

12.2  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Illinois, without reference to any conflict of laws provisions. Any dispute regarding this Agreement shall be enforced by the Court.

12.3  In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

12.4  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by the Company and Consultant.

12.5  Neither the Company nor Consultant shall assign this Agreement without the express written consent of the other. This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.

12.6  This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument. Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

12.7  Nothing contained hereof shall be deemed to create any relationship between Consultant and the Company other than an agency relationship. It is stipulated that the parties are not partners or joint venturers.

12.8  In consideration of Consultant's obligation to pay the Guaranteed Amount and Sale Expenses and the provision of services hereunder, The PrivateBank and Trust Company shall consent to a carve-out in favor of the Consultant for amounts due to Consultant hereunder, including the reimbursement of the Guaranteed Amount and payment of the Base Fee (to the extent applicable), subject to the terms and conditions set forth in the *Stipulation and Agreed Interim Order (I) Authorizing the Debtor's Use of Cash Collateral on an Interim Basis Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to the Debtor's Prepetition Secured Lender Pursuant to 11 U.S.C. §§ 361 and 363, (III) Scheduling a Final Hearing to Consider the Debtor's Use of Cash Collateral Pursuant to Bankruptcy Rule 4001(c), and (IV) Granting Related Relief* (the "Interim Cash Collateral Order"), and to the extent that any provision herein is inconsistent with the terms of the Interim Cash Collateral Order, the Interim Cash Collateral Order shall control.

*[remainder of page intentionally left blank]*

8

YELLEN PARTNERS, LLC

By: *Mark P. Wright*

Its: *Executive Vice President/ General Counsel*

QRS RECYCLING OF GEORGIA, LLC

By:_____

Its:_____

9

Exhibit "A"

# QRS
# Atlanta Location

| Item # | Description |
|---|---|
| | **QRS Atlanta** |
| 1 | 2013 **Air Technologies** Air Compressor Room 21'L X 11'W X 10'H w/ air storage tanks etc. |
| 2 | 2013 **Atlas Copco** model GA-37 Air Compressor s/n API 533679 |
| 3 | 2013 **Atlas Copco** model GA-37 Air Compressor s/n API 533470 |
| 4 | (2) 2012 **Atlas Copco** model GA-37FF Air Compressor w/ built in air dryers, 50hp capacity w/ s/n API 534883, ADI534044 |
| 5 | 2013 **Sherbrooke OEM** model Eaglevizion Optical Sorter 4' wide s/n OEM 13P2014-01 **(Not In Use)** |
| 6 | 2013 **Sherbrooke OEM** model Eaglevizion Optical Sorter 4' wide s/n OEM 13P2014-02 **(Not In Use)** |
| 7 | 2013 **Sherbrooke OEM** model Eaglevizion Optical Sorter 4' wide s/n OEM 13P2014-03 **(Not In Use)** |
| 8 | 2013 Compressed Air Holding Tank w/ vertical stand 4' wide x 12' high |
| 9 | Trommel Screen 12' Long x 4' wide |
| 10 | **Miller** model Bobcat 250 portable welder generator |
| 11 | Assorted Rolling stock as is consisting of skid steers forklifts etc |

Exhibit "A"

# QRS
# Atlanta Location

| Item # | Description |
|---|---|
| 12 | Complete Recycling line consisting of **Karl W. Schmidt** Pre-sort conveyors, take away conveyors, bounce belt conveyors, bounce belt feed conveyors, screen conveyors incline, slider bed, drag chain belt, in-ground conveyors, manual pick stations conveyors etc. w/ 2012 **The Enterprise Bailer Co** model 1416-200 w/ right hand eject, 200hp capacity, **Accent** bail wire system, 2012 **BRT Recycling** model Bal-O-Mat bail breaker w/ SEW Drive Motors, manual pick stations, 2012 Steinert model UMP 90 120 WG & Overhead suspension magnet, 2012 **Jost** model FUF 71" x 83" shaker table w/ JV208 Drives motors (5) **Redwave** optical units more info to come (2) Large Redwave units more info to come |
| 13 | **All office furniture and equipment, Computer Hardware & Software** |